# HILLSBOROUGH.

## JULY TERM, A. D. 1848.

## BARR & a. v. DENISTON & a.

One who has kept a district school, in pursuance of a contract with the prudential committee, but who has not produced a certificate of the superintending committee, required by law, cannot recover any compensation for his services.

A judgment recovered against the school district, in favor of the teacher, for such compensation, by the consent of the district, will be restrained by injunction, at the suit of any person interested as a tax-payer within the district, suing in behalf of himself and others.

A school district has no authority to waive the provision of law requiring the schoolmaster to produce the certificate of the superintending committee, or to dispense with the certificate.

BILL IN EQUITY. The bill alleged that the complainants, seventeen in number, were, on the first day of March, 1843, and still are, residents in school district No. eleven, in Goffstown, and liable to be assessed for all legal taxes in the district. That Shubael S. Jones, David Little and Alonzo F. Carr were duly appointed superintending school committee of said Goffstown, and served as such during the year commencing in March, 1843. That Richard B. Hadley, one of the complainants, was the prudential committee of said district during the same year, and in that capacity agreed with and employed Harvey Deniston to keep the school in the district for ten weeks, commencing on the 4th day of December in that year, with the express understanding and upon the condition that he should procure and present to

Barr *v.* Deniston.

said Hadley, before the commencement of the school, a certificate of the superintending committee, in form of law, stating that the said Deniston was qualified to instruct youth in the branches required by law to be taught in an English school in this State.

That Deniston began to teach the school on the 4th of December, but did not previously, or at any other time, procure any certificate of his qualifications to teach. That Hadley, the prudential committee, on the 26th of December, requested Deniston to leave the school and to desist from teaching the same.

That on the 16th day of March, 1844, Deniston, by his next friend, James Deniston, brought an action against the school district, to the Court of Common Pleas, held at Amherst, on the second Tuesday of October next following, to recover thirty dollars, alleged to be due him for teaching said school ten weeks from the fourth day of December, 1843, counting in various forms for the same cause of action. That the district appeared and defended the action by their attorney, under the direction of the prudential committee. That on the twenty-second day of May, 1845, the district appointed Jesse Carr their agent further to defend said action, and on the eighteenth day of October, 1845, knowing that Deniston had no lawful claim in the premises, by a majority vote, against the will, without the consent, and in spite of the remonstrance of the orators, voted that all further defence of the action of Deniston be withdrawn, and judgment allowed to be entered against the district, and that William H. Butterfield be the agent of the district to see the foregoing vote carried into effect, and the suit disposed of according to the vote. That at the January term of said Court of Common Pleas, in 1846, the district, by their agent, in pursuance of the said collusive and fraudulent vote, withdrew their defence to Deniston's action, and permitted him to take judgment for thirty-two dollars and sixty-eight cents, debt or damage, and costs taxed at twenty-three dollars

and eighteen cents. That execution was issued on said judgment, of which a copy was left with one of the selectmen and assessors of Goffstown, February 13, 1846. That the selectmen and assessors thereupon assessed upon the polls and ratable estate of the district the sum of sixty-two dollars and thirty-two cents, and on the 9th of March, 1846, committed to Daniel M. Taggart their warrant for collecting the same.

That the orators have never in any manner assented to the illegal demand, nor to the collusive acts of the district, but have each at all times resisted the same.

That in the assessment so made by the selectmen and assessors, each of the complainants is assessed in the several sums stated in the bill. That Deniston and the collector threaten to enforce the collection of the tax so assessed on the orators, for the payment of the unjust and collusive judgment.

The bill contained a general interrogatory, with prayer of injunctions against the collector, Deniston, and all others, that the judgment may be decreed null, for general relief, and for process against the district and Deniston.

The answer of the school district, by their agent, William H. Butterfield, under the seal of the district, admitted that the complainants were residents within the limits of district No. 11, and liable to be assessed for all legal taxes, as stated in the bill. That Shubael T. Jones, David Little and Alonzo F. Carr assumed to act as superintending school committee of Goffstown, as stated in the bill, and that Little and Carr did act as such committee, in certain cases specified in the answer; but whether any of them were lawfully appointed to the office, or were ever duly qualified to act therein, or whether any of them ever assumed so to act in any other than the cases so specified, the defendants alleged they had no knowledge or belief.

That said Richard B. Hadley was chosen and served as prudential committee of the district during the time stated,

Barr *v.* Deniston.

and that as such he employed the defendant, Harvey Deniston, to teach the school in the district for ten weeks, commencing on the fourth day of December, 1843, but denied that the bargain was upon any condition, or that there was any agreement that Deniston should, before he should commence the school, or at any other time, procure and present to said Hadley the certificate of any committee, touching his qualifications to instruct youth, and denied that the district is informed otherwise than by the bill, that any thing was said by Hadley to Deniston, at or near the time of making the contract, relating to any certificate whatever.

It admitted that, agreeably to the bargain, Deniston begun on the fourth of December, 1843, to keep the school, and alleged that he kept the same ten weeks, and that he has, ever since the expiration of that term, been entitled to the price agreed to be paid for his services by Hadley, in behalf of the district.

The answer further alleged that, at the time of making the bargain, and always afterwards, Deniston was well qualified to teach youth in the branches required by law to be taught in English schools in New Hampshire, and that the fact was well known to the complainants and all the inhabitants of the district. That before Deniston commenced keeping the school, he applied to Dr. Alonzo F. Carr, reputed to be one of the superintending school committee of Goffstown. That said Carr, assuming to act as such superintending school committee, examined Deniston as to his qualifications, and being satisfied in that particular, gave him a certificate in writing, signed by him the said Carr, that the said Deniston was well qualified to instruct youth in the several branches required to be taught in an English school in this State; which certificate he immediately presented to Hadley, who examined and appeared satisfied with it. That neither Hadley nor Deniston, in the belief of the defendant, suspected that the certificate of said Carr was illegal or defective; but it was presented by Deniston

in good faith and with an honest intention of complying with the law, and was so accepted by Hadley, who, when inquired of whether Deniston had produced a legal certificate, answered that he had; and during the term of the school, although attempts were made to dismiss the teacher for other causes, it was never asserted or pretended that he had not complied with the law in relation to the certificate of his qualifications, nor was any question raised in that regard until after the close of the school.

That on the twenty-fifth day of December, 1843, several of the complainants and others applied in writing to the supposed superintending school committee, to dismiss Deniston from the school, upon the alleged ground that he was " unfit to teach our school, as we are deriving no benefit from his services." That in consequence of the application, Little and Carr, alleged in the bill to be two of the superintending committee, gave notice, and visited the school, examined it, heard the complainants, and, upon deliberation, decided that Deniston was well fitted to teach the school, and that it was well taught and governed, that the scholars were making good progress, and that no good cause existed for dismissing said Deniston, and they therefore refused to dismiss him. That the said Barr and others induced another voter to sign the same application to the superintending committee, which had just been acted on, and presented the same again to the same Carr and Little, falsely representing to them that the signers, eighteen in number, constituted a majority of the district. Upon which representations, the supposed committee relying, directed a letter to Deniston, December 29th, in which, after reciting the Revised Statutes, chap. 73, § 3, that a majority of the district had requested his removal, and that they had no discretion themselves, they dismissed him, which letter was delivered on the 29th of December, 1843, to Deniston. That a majority of the legal voters immediately addressed to the supposed superintending committee a remonstrance against the

removal of said Deniston, and some who had signed the application for his removal, represented to the committee that they had not authorized their names to be used for such purpose, and Little erased his name from the letter of dismission; and Deniston, and a majority of the district, regarding the letter as having been procured from the superintending committee by fraud, Deniston continued to keep the school through the remainder of the stipulated term. That it was attended throughout by the children who are accustomed to attend school, including those of some of the plaintiffs.

The answer admitted the commencement, entry and continuance of the action of Deniston, the withdrawal of the defence, the judgment and execution, as the same are stated in the bill, but denied that the district ever authorized any defence, but stated that it was instituted by some of the complainants; and that the district had always admitted the justice of Deniston's claim, and had been satisfied with his services, and insisted upon the right of the district to waive technical objections to his equitable right to remuneration. That the district had, in the hands of Hadley, the prudential committee, funds sufficient to pay the claim, but Hadley refused so to appropriate them, although the district had repeatedly instructed him to do so. That at a meeting of the district next after the close of the school, some of the plaintiffs assembled before the hour, by a concert among themselves, and engrossed the offices, and that, at a subsequent meeting, they conspired to reject, and did reject, three legal voters, by means of which Jesse Carr was declared to be elected agent of the district.

As to the assessment of the tax stated in the bill, the defendant had no knowledge or belief, but did not deny the statement in the bill to be substantially true.

He denied all unlawful combination, &c.

The answer of Harvey Deniston was substantially to the same purport with that of the district, except as regards the

proceedings at the district meetings last described, which are not noticed in the answer of Deniston.

The cause was heard upon the bill and answer.

*Perley*, for the plaintiffs.

*William C. Clarke*, for the defendants.

WOODS, J.   The plaintiffs' case, as admitted by the answers, is briefly this.   They are residents in school district No. 11, in Goffstown, and liable by law to be assessed for the various objects pertaining to the support of schools, for which a tax may legally be imposed upon the inhabitants of the district.   The district, by its proper officer, in 1843, employed the defendant, Deniston, to teach the school for the following winter, at a stipulated rate of wages.   On the 4th day of December, 1843, he entered, without opposition from any one, upon the discharge of his office as the schoolmaster of the district, and continued in the exercise of that office till about the 25th of the same month, when measures were taken for his removal, the precise character and legal effect of which it may not be necessary to indicate.   In spite of those proceedings, he retained his situation as schoolmaster throughout the term agreed upon, and taught most of the scholars of the district as before.   Upon the expiration of his service, not receiving his wages or any part of them, he brought an action in the court of common pleas to recover them, in which, the district withdrawing all opposition, he recovered judgment for the sum claimed, with interest and costs.   An execution has been sued out and steps have been taken which ordinarily result in the assessment and collection of a tax upon the inhabitants of the district, if such a tax has not actually been assessed and committed to a collector with a warrant.

During the municipal year in which the defendant, Deniston, was employed and kept the school, there were at least

two persons who assumed to be of the superintending school committee of Goffstown, and who acted as such. One of them, on being requested by Deniston, examined him as to his qualifications to teach, and gave him a certificate, officially signed by himself, that the candidate was properly qualified, before entering upon his duties as teacher, which certificate was duly delivered to the prudential committee. But no other or different certificate was ever obtained, nor any other examination submitted to by the candidate.

Various defensive allegations are contained in the answers, which, in the form in which the case is presented, having been set down for hearing upon the bill and answer, may be taken to be true. The most material of them are, in substance, these. When the defendant, Deniston, was engaged by the prudential committee of the district to teach the school, no condition or agreement was made that he should obtain the certificate of any committee regarding his qualifications to teach ; that in point of fact he was well qualified to teach, and was well known by his employers to be so qualified ; that he taught the school in a manner that satisfied the people of the district, and the scholars made good progress under his tuition during all the term for which he was hired ; that intending to comply with the requirements of the law, he procured the certificate of Carr, who was one of the individuals who assumed to be of the superintending committee, and filed it with the prudential committee, and no objection was then, or at any time during his term of service, made by the prudential committee, or any other person, to the certificate, or to the want of a sufficient certificate ; that the district have frequently voted to pay him his wages, and directed that the money in the hands of the prudential committee, who is one of the plaintiffs, should be applied to that object; that the district desired to waive the legal objection to the payment of the teacher's wages, founded on the insufficiency of the certificate, which they conceive they have a right to waive, the

law in that particular having been made for the protection of the district, as the defendants contend.

Several legal propositions are involved in the decision of the cause thus presented.

1. In the first place, the statute (Rev. Stat. ch. 73, §§ 8, 9, 10,) after providing that the district shall be liable for the wages of the teacher, and on all contracts lawfully made by the prudential committee, expressly provides that no person shall receive any compensation for teaching a district school without producing to the prudential committee a certificate of the superintending committee of the town, that he is well qualified to teach youth in the branches of learning pointed out by the law. And by the superintending committee, if composed of more than one individual, must be understood a majority of their number, according to the provisions of chapter 1, section 13 of the Revised Statutes.

With this condition and prerequisite for receiving wages, there was, by the plain concession of the defendants, no compliance on the part of Deniston. He obtained the certificate of one only, and submitted himself to the examination of only one of the three who were holding the office of superintending school committee of the town. The noncompliance of the schoolmaster with the clear requisition of law would, by the plain and express terms of the statute, have afforded, on the part of the district, an undoubted defence to the action which he brought to recover his wages, had it been set up. The statute. on this head, is peculiarly guarded. In the ninth section of the chapter above referred to, it prohibits the employment of any person as a schoolmaster without the certificate, and in the following section prohibits such uncertificated master from receiving his wages. The meaning of the statute is too plain to admit the shadow of a doubt of the sufficiency of such a defence, if it had been set up by the district.

2. But the district omitted to do this; not through accident or neglect, but designedly, and upon the assumption

that the statute was intended merely for the protection of the district, and to insure them against the imposition of incompetent persons offering themselves as candidates for teachers; and that the district, being the only party for whose benefit the provision was made, might dispense with it, as an individual may dispense with any thing designed for his advantage. But in this assumption the district was clearly wrong. The statute is founded on considerations of high public policy, being designed to secure to the youth of the State the services of competent teachers, not merely as a boon to themselves and to their seniors in the school district, but for the purpose of training them for the duties they are in due time to assume of defending the institutions of their country. To insure this important object, the law requires that before he can be fully invested with the office of a schoolmaster, the candidate obtain the approbation of the committee appointed to inquire into his qualifications. Without the certificate of this committee, he is a mere volunteer in the functions of the office, and an usurper of its prerogatives. The school district is a quasi-corporation, instituted by law for certain specific objects, and clothed by positive statute with the power of exercising certain specified functions in the public scheme of education. These things they do, of course, by a vote of the majority present at a legal meeting. Except in these specified acts, the vote of the majority has no force. Among the powers conferred upon this little community is not that of electing a schoolmaster, or by any *ex post facto* proceeding, confirming an invalid appointment of one. They have no power to raise money to pay such a person, nor is their approbation or instruction any warrant or justification to the prudential committee for so doing. He is not to be guided or restrained by their vote in the discharge of duties which the law makes his own.

3. To the judgment which was rendered in the court of common pleas, in favor of Deniston against the school district,

these plaintiffs were not parties, nor could they have become such by any rule of law or practice. They are, therefore, not bound by it. It is not, nor could it have been, set up in the answers as any bar to the complaint. Considering it, therefore, as having been rendered fairly and in due course, and binding upon the parties to it, the plaintiffs have a right to be protected against it, if it be likely to be made the instrument of injustice and oppression towards them.

But, in fact, it is a judgment rendered upon an agreement of the parties to it, under circumstances which these plaintiffs may be allowed to treat as collusive. It is, in the hands of the parties to it, an instrument for indirectly and under color doing that which the law does not enable or permit them to do directly. The parties appear to have intended, by means of the judgment, to compel the minority of the district to pay for the services of the schoolmaster not lawfully entitled to pay, and thus to give to the majority a power to tax the minority for purposes not authorized by law.

4. It is a familiar proposition that where a town or other public corporation undertake to levy a tax for objects not warranted by their powers, any party affected by the illegal assessment may treat it as a nullity, and the law will afford him redress against the authors of the wrong. The preventive interposition of equity has been applied to like cases, and it has been held that where the inhabitants of a town or parish were threatened with an illegal tax, one or more suing in behalf of all, may maintain a suit to restrain the collection of it. *Attorney General* v. *Heclis*, 2 Sim. & Stu. 67, and in the analogous case of the perversion of the fund, it was held to be no defence to a like suit that the majority agreed to the act complained of. *Gray* v. *Chaplin*, 1 Sim. 8.

No objections, whether formal or otherwise, have been urged against the force of these considerations, and they clearly call for the interposition of the court against the collection of the illegal tax. The plaintiffs are entitled to an

injunction, perpetually restraining the defendant, Deniston, and his agents, from proceeding further with the execution, or otherwise enforcing the judgment, and the collector from collecting the tax.

*Decree accordingly.*